IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: SYNGENTA AG MIR 162 | ) | MDL No. 2591 |
| CORN LITIGATION | ) | |
| | ) | Case No. 14-md-2591-JWL |
| This Document Relates To: | ) | |
| | ) | |
| *Trans Coastal Supply Company, Inc.* | ) | |
| *v. Syngenta AG, et al.*, No. 14-2637-JWL | ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

This single case within this MDL brought by plaintiff Trans Coastal Supply Company, Inc. ("Trans Coastal" or "plaintiff") presently comes before the Court on various motions by defendant Syngenta[1] to exclude expert testimony. As more fully set forth below, the Court rules as follows: The motion to exclude expert testimony by Joseph Keaschall (Doc. # 41) is **denied**. The motion to exclude expert testimony by Randal Giroux (Doc. # 42) is **granted in part and denied in part**, as previously ruled. The motion to exclude expert testimony by James Woods (Doc. # 45) is **granted in part and denied in part**.

This matter is also before the Court on Syngenta's motion for summary judgment (Doc. # 48). That motion is hereby **granted in part and denied in part**. The motion is granted with respect to plaintiff's claims for a Lanham Act violation, negligent

_____

[1] As in prior opinions, the Court refers to defendants collectively as "Syngenta".

interference, and fraudulent misrepresentation, and with respect to certain damage claims; Syngenta is awarded judgment on those claims. The motion is otherwise denied.[2]

I. **Background**

This MDL includes hundreds of similar suits filed against Syngenta by corn farmers and others in the corn industry. The suits generally relate to Syngenta's commercialization of genetically-modified corn seed products, Viptera and Duracade, which contained the trait MIR 162, without approval of that trait by China, an export market. The plaintiffs have alleged that Syngenta's commercialization of its products caused the genetically-modified corn to be commingled throughout the corn supply in the United States; that China rejected imports of all corn from the United States because of the presence of MIR 162; that such rejection caused corn prices to drop in the United States; and that corn farmers and others in the industry were harmed by that market effect. Syngenta reached a global settlement of almost all cases, but the present case was not included in that settlement.

In this case, plaintiff Trans Coastal alleges that it exported corn and corn byproducts (including "dried distiller's grains with solubles" or "DDGS") to China, and that it suffered damage to its business because of the rejections of shipments in China. As set forth in the pretrial order, plaintiff asserts a claim under the federal Lanham Act and state-law claims

---

[2] The pending motions regarding sealing of briefs and exhibits will be addressed by separate order.

of negligence, negligent interference with prospective economic relations, and fraudulent misrepresentation.

## II. <u>Motions to Exclude – Keaschall and Giroux</u>

Syngenta summarily moves to exclude expert opinions by Joseph Keaschall and Randal Giroux for the same reasons it argued before trial of the related claims of the Kansas state class, and plaintiff summarily opposes those motions for the same reasons argued by the Kansas plaintiffs. In that prior proceeding, the Court denied the motion to exclude opinions by Dr. Keaschall, and it granted in part and denied in part the motion to exclude opinions by Dr. Giroux. *See In re Syngenta AG MIR 162 Corn Litig.*, 2017 WL 1738014, at *14, 17-18 (D. Kan. May 4, 2017) (Lungstrum, J.). Neither side has made any new arguments, and each indicates that it is merely seeking to preserve its positions for purposes of appeal. Therefore, the Court reaffirms its prior rulings, which will also be applied in this case. Accordingly, Syngenta's present motion relating to Dr. Keaschall is denied, and its present motion relating to Dr. Giroux is granted in part and denied in part, as set forth in the Court's prior opinion. *See id.*

## III. <u>Motion to Exclude – Woods</u>

### A. *<u>Dr. Woods's Opinions</u>*

Syngenta seeks to exclude expert opinions by Dr. James Woods, an economist. According to his report, Dr. Woods was retained by plaintiff to quantify damages in this case. The report contains four basic opinions. First, Dr. Woods opines that plaintiff

sustained $18,275,838.51 in losses relating to washouts of contracts to purchase commodities from sellers in the United States. Those "washouts" occurred when plaintiff was unable to fulfill purchase obligations. By the terms of those contracts, plaintiff was then required to pay each seller the difference between the contract price for the commodity and the market price at the time of the washout (the price at which the seller could sell to another replacement buyer). According to Dr. Woods, those washout amounts are akin to penalties for plaintiff's failure to fulfill the contracts. The report includes a schedule totaling these washout penalty amounts for 24 contracts involving 13 sellers with whom plaintiff had contracts.

Second, Dr. Woods opines that plaintiff suffered losses in the amount of $5,451,840 in 2014 and 2015 relating to washouts that occurred when Chinese buyers did not satisfy contractual obligations to purchase commodities from plaintiff. According to Dr. Woods, those washout amounts (calculated by the difference between the contract and market prices) totaled $5,451,840, although plaintiff's expected profit on those transactions would have been approximately $460,000.

Third, Dr. Woods opines that plaintiff sustained $339,244 in losses relating to open orders in China that the Chinese buyers did not complete. Plaintiff did not officially "washout" these contracts by issuing formal invoices. Although the washouts would have totaled approximately $1,400,000, plaintiff did not record that amount in revenue in its books because it did not issue the requisite invoices. Dr. Woods opines that those orders would have generated $339,244 in profits for plaintiff.

Fourth, Dr. Woods offered an opinion concerning plaintiff's losses for additional costs and lost opportunities. Plaintiff's records did not allow Dr. Woods to determine such losses by reference to specific contracts. Accordingly, Dr. Woods essentially determined plaintiff's total additional losses by determining plaintiff's entire business losses from January 2014 to October 2016 and deducting the losses already accounted in the preceding opinions. Dr. Woods determined the total business losses by using a projected forecast prepared by plaintiff in December 2013 that assumed no negative impact from the rejections that had started in China, and then comparing it to plaintiff's actual performance. Using that method, Dr. Woods opines that plaintiff sustained losses for additional costs and lost opportunities in the total amount of $48,178,154.

B.    *Governing Standards*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert testimony. *See id.* at 589-93; *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999). The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In order to determine that an expert's opinions are admissible, this Court must undertake a two-part analysis: first, the Court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the Court must determine whether the witness's opinions are "reliable" under the principles set forth in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702 advisory committee notes. The district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *See Kumho Tire*, 536 U.S. at 152.

### C. *U.S. Purchase Contracts*

Syngenta challenges Dr. Woods's opinion that plaintiff suffered approximately $18.3 million in losses relating to U.S. purchase contracts. First, because plaintiff exported commodities other than DDGS and exported to counties other than China, Syngenta argues that Dr. Woods's figure improperly assumes that all of the washed out U.S. contracts were for shipments bound for China. Syngenta cites Dr. Woods's concession in his deposition that he did not check to make sure these contracts were for shipment to China. In addition, Dr. Woods's report suggests that these contracts were with sellers of DDGS and "other commodities." Thus, Syngenta argues that this figure is not properly limited to losses resulting from the rejection of plaintiff's shipments of DDGS in China.

Plaintiff argues in response that Dr. Woods does not offer any opinion regarding causation; rather, Dr. Woods bases his opinion on the assumption – to be proved by other evidence – that plaintiff's non-DDGS and non-China business was also affected by

Syngenta's negligence in commercializing products with MIR 162 prior to Chinese approval. Plaintiff contends that all of these penalties owed to U.S. sellers were ultimately caused by the rejections in China and the disruption in the corn and DDGS markets.

Thus, according to plaintiff, Dr. Woods offers only a limited opinion concerning these losses. He does *not* opine – and may not opine at trial – that Syngenta caused damages relating to U.S. contracts totaling $18.3 million. Rather, his testimony must be limited to an opinion that, if plaintiff shows that Syngenta's negligence caused it to suffer non-DDGS and non-China washouts with U.S. sellers, he has added up those washout amounts. If the jury were to reject that all-business theory of causation, finding that Syngenta's negligence caused only washouts for DDGS shipments to China, then the per-contract amounts on Dr. Woods's schedule could be used to support a proper damage award – assuming plaintiff has offered evidence that particular invoices were for DDGS shipments to China. Thus, Syngenta's motion is granted to the extent that Dr. Woods's expert testimony must be limited as set forth herein.

Second, Syngenta argues that this opinion by Dr. Woods improperly includes contracts executed after China began rejecting shipments in late 2013, after which time plaintiff should have understood the risk of shipping to China. Dr. Woods conceded that he did not exclude such contracts. This issue relates to causation, however, and because Dr. Woods will not be permitted to offer any opinion testimony concerning causation (as ruled above), no additional testimony is subject to exclusion on this basis.

D. *Open Orders in China*

Syngenta challenges Dr. Woods's opinion that plaintiff sustained $339,244 in lost profits relating to open orders in China for which plaintiff did not issue washout invoices. Syngenta argues in cursory fashion that this opinion improperly assumes that any such contracts for shipments of DDGS to China failed because of the presence of unapproved MIR 162 or because of the rejections in China, and not because of some unrelated reason (such as some problem at the buyer). Plaintiff has not responded to this argument.

The Court agrees that Dr. Woods has not offered any analysis or opinion addressing whether particular losses on Chinese open orders were in fact caused by the presence of MIR 162 or the rejection of shipments, and that Dr. Woods's testimony must be limited accordingly. Therefore, Dr. Woods will not be permitted to testify that Syngenta (if found negligent) caused these losses. Rather, he may testify only that, if it is shown that Syngenta's conduct caused plaintiff to lose revenue on particular contracts, plaintiff lost profits on those contracts in particular amounts.

E.    *Washed Out Chinese Contracts*

Syngenta next challenges Dr. Woods's opinion that plaintiff suffered losses of approximately $5.45 million relating to Chinese washouts. Even though these contracts differ from the Chinese open orders only because washout invoices were sent, Dr. Woods uses the total amount of washouts for his damage figure, instead of the profit lost on the contracts (approximately $460,000). Dr. Woods apparently uses the larger figure because plaintiff recorded that amount in revenue in its books. Syngenta argues that only the lost-profit figure would be relevant to a determination of plaintiff's actual harm suffered.

Plaintiff has not responded to this argument in its response brief, nor has Dr. Woods addressed the argument in his declaration that was submitted with that brief. Thus, plaintiff has not explained why the $5.45 million figure would represent a proper measure of plaintiff's damages under a reliable method of economic analysis. Accordingly, Dr. Woods may not testify at trial that plaintiff suffered $5.45 million in losses relating to these washouts; rather, his testimony concerning plaintiff's loss must be limited to the use of the lost-profit figure.

In addition, Dr. Woods has not made any determination whether these washouts occurred specifically because of rejected shipments or the presence of MIR 162. Thus, this opinion is subject to the same limitation that applies to his opinion concerning open orders – Dr. Woods cannot testify that Syngenta's conduct caused these losses, but may only testify to particular lost-profit figures, assuming plaintiff can show that Syngenta's conduct caused plaintiff to lose revenue on particular contracts. Syngenta's motion is granted to the extent of these limitations.

Syngenta also complains that Dr. Woods did not verify the market-value figures used by plaintiff in its washout letters sent to Chinese buyers. The Court rejects this argument for exclusion. Dr. Woods did not use arbitrary figures for his analysis of lost profits on these washouts, but used the actual market figures used by plaintiff in declaring the washouts. Syngenta is free to argue to the jury that the buyers would have successfully disputed those figures used by plaintiff, but that argument affects only the weight of Dr. Woods's opinion, not its admissibility.

F.  _Additional Costs and Lost Opportunities_

Syngenta also challenges Dr. Woods's opinion that plaintiff suffered approximately $48.2 million in losses related to additional costs and lost opportunities. Dr. Woods has attempted to quantify plaintiff's losses suffered "because it incurred additional costs on shipments that were delayed, detained, or re-routed and lost profits on transactions it could not undertake." Because he is unable to quantify those losses by reference to specific contracts or opportunities, Dr. Woods has employed a method by which he quantifies the decrease in plaintiff's actual profits from the profits that plaintiff projected without accounting for the presence of MIR 162 in the U.S. corn supply and the disruption in the market caused by the rejection of shipments in China. Thus, Dr. Woods's figure essentially assumes that all of plaintiff's business losses – whether or not tied to shipments of DDGS to China – may be attributed to Syngenta's negligent conduct. In using this method, Dr. Woods does not distinguish between losses from additional costs and losses from lost opportunities.

Syngenta argues that Dr. Woods should not be permitted to assume that all of plaintiff's business losses were caused by the alleged negligence. In his report, Dr. Woods states that it is his "understanding" that the entirety of plaintiff's business was affected by the rejections and market disruption. In his declaration, Dr. Woods states that he has calculated lost profits as alleged by plaintiff; and that plaintiff alleges that its losses relating to DDGS shipments to China led to losses with other products, its loss of its line of credit, and ultimately to its bankruptcy. Dr. Woods did not perform any analysis to determine whether the events relating to MIR 162 in fact caused this chain of events and all of plaintiff's business losses. In its response brief, plaintiff confirms that Dr. Woods was not

asked to perform such an analysis and that he has instead relied on that assumption in offering his opinion.

Accordingly, Dr. Woods's testimony would be limited to that extent. He could not testify that plaintiff suffered such damages because of Syngenta's conduct or because of the introduction of MIR 162 – he would not be allowed to put that sort of expert stamp on plaintiff's claim of causation. Rather, he would only be permitted to offer the opinion that, if plaintiff were to show (by other evidence) that all of its business losses were caused by Syngenta's negligence, then the difference between plaintiff's actual performance and its projected performance would be a particular figure. Moreover, as noted above, Dr. Woods has not offered any alternative basis for an expert opinion concerning the amount of additional costs or lost opportunities, as he has not been able to break down any such losses by contract, or between DDGS and non-DDGS losses, or between China and non-China losses, or even between losses for additional costs and losses for lost opportunities. Accordingly, if plaintiff could not show that Syngenta caused the loss of its entire business, there is no basis for any award relating to additional costs or lost opportunities.

In fact, as discussed below, plaintiff has not met its burden to make the necessary showing, as required to withstand summary judgment with respect to this category of damages. Accordingly, Dr. Woods's expert opinion on these damages, as limited herein, becomes irrelevant, and Syngenta's motion is granted to that extent.[3]

---

[3] In light of these rulings, the Court need not address Syngenta's additional arguments relating to Dr. Woods's use of the projection, the damages period, and Dr. Woods's qualifications.

## IV.    Motion for Summary Judgment

### A.    *Governing Standards*

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *See id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *See id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof."  *See Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005).  To accomplish this, sufficient evidence

pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *See Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *See Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### B. *Abandoned Claims*

Plaintiff states in its brief that it does not oppose summary judgment in favor of Syngenta on its Lanham Act and fraud claims. In addition, plaintiff agrees that if Illinois law governs its state-law claims, its claim for negligent interference must fail. As discussed below, the Court does conclude that Illinois law applies here. Accordingly, Syngenta's motion is granted with respect to these three claims, and judgment is entered in favor of Syngenta on the claims. Plaintiff's effective withdrawal of these claims leaves only its negligence claim against Syngenta.

### C. *Consideration of Plaintiff's Evidence*

In moving for summary judgment, Syngenta has included a statement of facts with citations to record evidence submitted with the motion. In its own brief, plaintiff has not responded to Syngenta's facts, which are therefore deemed uncontroverted. For additional facts, plaintiff seeks to incorporate by reference the statement of facts and accompanying evidence submitted by the plaintiffs in opposition to summary judgment in the related

Kansas class case. Plaintiff has also attached four additional exhibits, which it cites in its argument, although it has not cited those exhibits in any statement of facts.

Syngenta argues that plaintiff has not complied with applicable rules and therefore that the Court should not consider plaintiff's additional facts. The Court will allow these facts, however, under the unique circumstances presented here. Certainly, it would have been better for plaintiff to have restated any relevant facts from the prior briefing, but it has cited in its brief to any facts that it believes relevant; and the Court in its discretion has considered any such facts, supported by evidence, that are relevant and cited in plaintiff's argument. The Court has not considered any factual statements not supported by citation to record evidence. Moreover, the Court has considered plaintiff's additional exhibits, which are limited in number, and to which Syngenta has been able to respond.

### D. *Economic Loss Doctrine*

Syngenta argues that plaintiff's negligence claim is barred by the common-law economic loss doctrine. Before considering that argument, the Court must determine which state's law governs plaintiff's negligence claim. Syngenta argues that California law applies, while plaintiff contends that the claim is governed by the law of Illinois, where plaintiff is located. Interestingly, in briefing on Syngenta's motion to dismiss in the main MDL case, Syngenta argued that plaintiff's negligent misrepresentation claim was governed by Illinois law (which prohibits such a claim under these circumstances), while plaintiff argued that it was too early to decide whether Illinois law or perhaps California or

Minnesota law applied.[4] The Court ruled at that time that under the applicable Illinois choice-of-law rules, Illinois substantive law applied. *See In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1229 (D. Kan. 2015) (Lungstrum, J.).

Syngenta argues that the economic loss doctrine would bar plaintiff's claim under California law, and that a conflict therefore arises to the extent that Illinois law would allow the claim. Any such conflict is irrelevant, however. As the Court noted in its prior order, under Illinois law, "the law of the place of the injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *See id.* (quoting *Esser v. McIntyre*, 661 N.E.2d1138, 1141 (Ill. 1996)).[5] That rule was reaffirmed in the case on which Syngenta relies. *See Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903-04 (Ill. 2007). Despite its previous argument to the contrary, Syngenta now suggests that plaintiff may have suffered its injury in California, from which plaintiff made shipments to China. As the Court previously stated, however, Illinois considers economic injury to have been suffered at the place of the plaintiff's residence. *See Syngenta*, 131 F. Supp. 3d at 1229 (citing *Knaus v. Guidry*, 906 N.E.2d 644, 663 (Ill. Ct. App. 2009)). Syngenta has not explained why the Court's prior reasoning is not still valid. Accordingly, because plaintiff suffered any injury in Illinois, the Court rules that that state's law governs plaintiff's claim. Moreover, even if the Court were to apply the most-significant-relationship test, the outcome would not change, as the factors are neutral or weigh in favor

---

[4] Thus, Syngenta's argument that plaintiff's prior position on this issue should be held against it is hardly persuasive.

[5] The parties agree that the Court should apply the choice-of-law rules of Illinois, where this case was originally filed.

of applying Illinois law (just as Syngenta argued in the prior briefing). The Court therefore considers the economic loss doctrine under Illinois law.

In the prior briefing on Syngenta's motion to dismiss in the main MDL case, Syngenta argued for application of the stranger economic loss doctrine (SELD), which has been applied in the absence of any contractual or direct relationship between the parties. The Court declined to apply the SELD under any applicable state's law at that stage. *See id.* at 1195-96. The Court noted that the doctrine is not applied absolutely and is subject to exceptions; that the rationales supporting the SELD would not necessarily be furthered by application in this case; that this was not a lack-of-access case (the type of case in which the doctrine had been applied); that liability would not be too remote, as Syngenta allegedly foresaw these very economic losses; that the scope of liability would not be completely open-ended, as the plaintiffs represented a discrete group within an interconnected market; that the effects would not be disproportionate to the wrongful conduct that caused the very injuries foreseen; and that damages would not be too speculative, given the commodity markets for corn and milo. *See id.* Thus, the Court ruled that it would not apply the SELD unless a particular state's law essentially required application of the SELD in this case. *See id.* at 1196. The Court then analyzed the SELD under Illinois law. *See id.* at 1202-03. The Court concluded as follows:

> Thus, although the Illinois Supreme Court applied the ELD in a stranger context in [*In re Chicago Flood Litigation*, 680 N.E.2d 265 (Ill. 1997)], that case is distinguishable as an access case, and Illinois courts have found exceptions to the ELD in cases in which the rationales for the rule would not be furthered. Moreover, the Illinois Supreme Court has indicated that courts have not applied the ELD in some cases in which the defendant had a duty to act reasonably to avoid the very harm that occurred, and

> plaintiffs in this case have alleged (and this Court has now recognized) just
> such a duty to avoid plaintiffs' financial losses in the market. Thus, *Chicago
> Flood* does not require a conclusion that the Illinois Supreme Court would
> necessarily apply the SELD to bar plaintiffs' claims in this case even without
> serving the purposes of the doctrine.

*See id.* at 1203.

Syngenta now argues that the economic loss doctrine should apply to plaintiff's negligence claim. Syngenta had no direct or contractual relationship with plaintiff; thus, Syngenta seeks to apply the SELD. Nevertheless, Syngenta has not addressed at all the Court's prior analysis of the SELD under Illinois law. Moreover, the Court previously considered and rejected Syngenta's argument that exceptions to the SELD are strictly limited to those enumerated in a few Illinois cases, *see id.* at 1202-03, and the additional cases cited by Syngenta do not suggest such a bright-line rule.

Syngenta also argues that plaintiff could and did allocate the risk of loss in entering into shipment contracts, which fact weighs in favor of application of the SELD. That factor represents just one consideration, however, and the Court is not persuaded that Illinois law essentially requires application of the SELD in this case. The Court therefore cannot conclude as a matter of law that plaintiff's claim is barred by the SELD, for the reasons set forth in the thorough analysis supporting the Court's prior decision. Syngenta's motion for summary judgment on this basis is denied.

### E. Proximate Cause

In its prior ruling, the Court rejected Syngenta's argument that the plaintiffs could not establish proximate cause as a matter of law. *See id.* at 1193. For the same reasons, the Court denies Syngenta's present motion for summary judgment on the same basis.

As the Court previously noted, proximate cause presents a question of fact for the jury in all but the most extreme cases. *See id.* (quoting Dan B. Dobbs, et al., *The Law of Torts* § 214 (2d ed. 2011)); *see also Abrams v. City of Chicago*, 811 N.E.2d 670, 674 (Ill. 2004) (proximate cause is ordinarily a question of fact for the jury). Moreover, as the Court previously noted and as Syngenta does not dispute, the foreseeability of the harm is the key consideration. *See Syngenta*, 131 F. Supp. 3d at 1193. In this case, plaintiff has pointed to evidence that Syngenta actually foresaw the very harm that occurred. Syngenta nevertheless argues that it was not foreseeable that plaintiff would ship DDGS without approval of MIR 162 in China. This is an issue for the jury, however, as the Court cannot say as a matter of law that such harm was not foreseeable.[6] Accordingly, the Court denies Syngenta's motion for summary judgment on this basis.

### F. Damages

Syngenta seeks summary judgment with respect to plaintiff's claims for damages. In large part, Syngenta repeats the same arguments raised in its motion to exclude the testimony of plaintiff's damages expert, James Woods, and it argues that plaintiff's claims must fail if its expert is excluded. As discussed above, however, the Court has not excluded Dr. Woods's testimony in its entirety. Syngenta also argues that plaintiff's claims fail even with Dr. Woods's testimony.

Syngenta seeks summary judgment on any claim by plaintiff for approximately $5.45 million in damages for Chinese washouts. The Court agrees that summary judgment

---

[6] This is the case, even with evidence that relates only to the market generally and not to plaintiff specifically.

is appropriate, for the reasons set forth above with respect to Dr. Woods's opinion concerning that claim. In opposing summary judgment, plaintiff has not addressed this argument; thus, plaintiff has not explained how this figure, which represents that total of washout figures entered as revenue on plaintiff's books, provides an accurate accounting of plaintiff's actual loss with respect to those contracts. Summary judgment is therefore appropriate. Just as Dr. Woods's testimony is limited to the estimate of lost profits relating to those washed out contracts (approximately $460,000), so is plaintiff's claim so limited.

Syngenta also seeks summary judgment with respect to plaintiff's claim for its lost profits (approximately $48 million), which is based on the theory that all of plaintiff's business losses from January 2014 to October 2016 – even if for non-DDGS and non-China business – are attributable to Syngenta. Syngenta argues that this claim by plaintiff is too speculative as a matter of law. *See TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 632 (7th Cir. 2007) (Illinois law requires lost profits to be established with reasonable certainty). As discussed above, Dr. Woods did not do any analysis to support the contention that plaintiff lost all of its business because of the presence of MIR 162 in the corn supply or the rejection of shipments in China; rather, as confirmed by plaintiff in opposing the motion to exclude, he relied on an assumption that must be proved by other evidence.

Plaintiff has not supplied any such evidence, however, as required to withstand summary judgment. Plaintiff has not offered any analysis of its business failure. It has not offered evidence addressing the loss of its line of credit. It has not cited any testimony or other evidence explaining how the entirety of its business losses may be traced to

Syngenta's conduct. Nor has plaintiff addressed – or provided evidence to address – the other factors cited by Syngenta (with supporting evidence) that affected plaintiff's business, such as issues with soybeans, corn gluten meal, and banking. Plaintiff offers only testimony by its president that Syngenta "decimated" plaintiff, that plaintiff suffered extreme financial distress because of Syngenta, resulting in a cascade effect and bankruptcy. She also indicated that plaintiff's expert would determine any lost business, but as discussed, Dr. Woods did no such causation analysis.

This vague testimony about being "decimated" amounts to no more than speculation that all of plaintiff's losses were caused by the issues involving Syngenta and MIR 162, and it therefore falls far short of the reasonable certainty needed to support a claim for lost profits. Accordingly, the Court awards Syngenta summary judgment on this particular aspect of plaintiff's claim for damages.[7]

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion to exclude expert testimony by Joseph Keaschall (Doc. # 41) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT defendants' motion to exclude expert testimony by Randal Giroux (Doc. # 42) is **granted in part and denied in part**, as previously ruled.

---

[7] In light of this ruling, the Court need not address Syngenta's argument that plaintiff's claimed losses improperly include money paid for illegal bribes.

IT IS FURTHER ORDERED THAT defendants' motion to exclude expert testimony by James Woods (Doc. # 45) is **granted in part and denied in part**, as set forth herein.

IT IS FURTHER ORDERED THAT defendants' motion for summary judgment (Doc. # 48) is **granted in part and denied in part**.  The motion is granted with respect to plaintiff's claims for a Lanham Act violation, negligent interference, and fraudulent misrepresentation, and with respect to certain damage claims, and defendants are awarded judgment on those claims.  The motion is otherwise denied.

IT IS SO ORDERED.

Dated this 5th day of February, 2020, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge